### THE CARLOS.

(District Court, N. D. California, First Division. November 25, 1916.)

No. 15898.

1. SHIPPING ⊕=53—CHARTER OF DECK OF VESSEL—CONSTRUCTION.

The use, in a charter by the owner of the deck of a ship for the carriage of a deck load of piling, of the words "all other usual terms and conditions," *held* not to import into such charter a provision of the form of charter adopted by the Shipowners' Association, for use where the entire vessel is chartered, that "vessel to be permitted to carry her usual deck load, but at shipper's risk"; such provision being neither necessary nor appropriate in a charter of the deck space alone.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 214–218, 225; Dec. Dig. ⊕=53.]

2. SHIPPING ⊕=123—LOSS OF CARGO—INSUFFICIENT STOWAGE.

The loss of part of a deck load of creosoted piles, which broke the stanchions and lashings by which they were secured when the ship listed, owing to heavy swells and cross-seas, but which were no worse than were to be expected, *held* not due to a peril of the sea, but to insufficient stowage, for which the ship was liable.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 225, 454, 455, 466; Dec. Dig. ⊕=123.]

In Admiralty. Suit by the J. M. Colman Company against the steamship Carlos; Olson & Mahony, a corporation, and others, claimants. Decree for libelant.

⊕=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

McClanahan & Derby, of San Francisco, Cal., for libelant.
Ira S. Lillick, of San Francisco, Cal., for claimants.

DOOLING, District Judge. The deck of the Carlos was chartered for the carriage of creosoted piles from Puget Sound to San Pedro, and 560 piles were taken on board. Of these only 228 were delivered, the others having been lost overboard. This action is to recover the value of 332 piles not delivered.

[1] Claimants' first contention is that the piles were carried at the owner's risk. It is claimed in this connection that the provisions of a charter adopted by the Shipowners' Association are imported into the present one by the use in the latter of the words "all other usual terms and conditions." The provision of the Shipowners' Association charter contended for is the following:

"Vessel to be permitted to carry her usual deck load, but at shipper's risk."

This provision is manifestly one for the protection of the owners where the whole ship is chartered to a third party, and is a limitation upon the right of such third party to carry a deck load, except at the shipper's risk. The present charter is directly from the owner to the shipper of the deck space alone, and the provision in the Shipowners' Association charter, "vessel to be permitted to carry her usual deck load," is neither necessary nor appropriate to give effect to the present one, which is in the following form:

"We confirm having this day chartered to you from Messrs. Olson & Mahony, the entire deck of the steamer Carlos to load a full deck load of creosoted piling and/or lumber, your option, from usual safe loading places on Puget Sound."

As it was not necessary to import the words "vessel to be permitted to carry her usual deck load," in order to render effective the present charter, so we cannot import the other words, "but at shipper's risk," which are but a limitation upon the permission granted by the preceding words; that is to say, as we cannot import into the present charter the permission to use the deck, so we cannot import the words which are but a limitation upon that particular permission. The contention, therefore, that under the present charter the deck load was carried at the owner's risk, has not been sustained.

[2] But it is further urged that claimant is not liable, because the loss of the piles was due to a peril of the sea. The piles were stowed lengthwise on the deck and supported by stanchions on either side. They were also held in place by lashings. The vessel encountered no severe storms, but did meet heavy swells and cross-seas. When the vessel listed in one of these swells and cross-seas, the stanchions and lashings gave way, and the piles slid overboard. There was no special jar, and no strain other than that due to the weight of the piles, so that I think it is fairly evident that the piles were lost because the stanchions were not sufficiently strong to support their weight when the vessel listed, or because such weight was not properly distributed.

While a heavy swell which causes a vessel to list may be a peril of the sea, yet in the present instance the loss in question was not due to this cause alone, but to the listing of the vessel plus the fact that

the stanchions could not support the weight to which, in the very nature of things, it must have been foreseen they would be subjected. In such case the loss cannot be attributed to the sea peril, but to the fact that such an ordinary experience as the listing of the vessel by a heavy swell was not sufficiently provided against. This was a load of creosoted piles, which have a tendency to slip, and the necessities in stowage of piles of this kind cannot be determined by a consideration of what has been done with other loads of a different kind. And if it be granted, as claimed, that these piles were lighter than ordinary piles, then there would seem to be less reason for the stanchions to give way, and more reason to believe that they were insufficient. As in my opinion the piles were not properly stowed to meet the ordinary incidents of a voyage at that season, the claimant is not entitled to the immunity claimed under Harter Act Feb. 13, 1893, c. 105, 27 Stat. 445 (Comp. St. 1913, §§ 8029–8035).

I cannot but find that the loss of the piles in question was not due to any peril of the sea that should not have been provided against, and for that reason a decree will be entered establishing the liability of the Carlos, and referring the cause to the commissioner to ascertain and report the amount of damage.